LeeAtta K. **HORNER**, Plaintiff
and Appellee,

v.

Curtis P. **HORNER**, Defendant
and Appellant.

Civil No. 950414.

Supreme Court of North Dakota.

June 3, 1996.

Bonnie P. Humphrey (argued), Special Assistant State's Attorney, Bismarck, for plaintiff and appellee.

Kelsch, Kelsch, Ruff, Austin & Kranda, Collins and Main, Mandan, for defendant and appellant; argued by Timothy J. Wahlin.

MESCHKE, Justice.

Curtis P. Horner appeals from an amended decree increasing the child support payable to his ex-wife, LeeAtta K. Horner, from $411 to $1,547 monthly. We conclude the North Dakota Child Support Guidelines do not allow consideration of an obligor's increased cost of living when setting child support. Therefore, we affirm.

Curtis and LeeAtta were married on December 30, 1977, and had three children. Curtis and LeeAtta separated in 1983, and Curtis moved to California. They were divorced in North Dakota in 1991. The decree placed custody of the three children with LeeAtta, and ordered Curtis to pay $411 monthly child support. Curtis later remarried, had two children with his new wife, and adopted her prior son.

In February 1995, the Bismarck Regional Child Support Enforcement Unit moved to increase Curtis's child support. Curtis conceded some increase was in order, but argued his net income should "be decreased by 15% to reflect the added cost of living in California . . . ."

At the hearing, the judicial referee was "sympathetic" to this cost-of-living argument, but concluded the Guidelines did not allow it, and decided that Curtis should pay $1,547 monthly. Curtis requested district court review of the referee's decision. The district court agreed with the referee that "[n]othing in the guidelines allows such an adjustment." Curtis appeals.

Curtis asks us to decide "whether the North Dakota Child Support Guidelines allow for a fact finder to consider the cost of living of an out-of-state obligor when setting child support." We conclude they do not.

There is a rebuttable presumption that application of the Guidelines results in "the correct amount of child support." NDCC 14–09–09.7(3). Before 1995, this presumption could only be rebutted if "factors not considered by the guidelines will result in an undue hardship to the obligor or a child for whom support is sought." 1989 N.D. Laws ch. 148, § 4. Because the Guidelines then established by the Department of Human Services declared the "subsistence needs . . .

and daily living expenses of the obligor" were considered, *see* NDAC 75–02–04.1–09(1)(a) (1991), we held that an obligor's daily living expenses could not be used to rebut the Guideline's presumptively correct amount. *See Scherling v. Scherling,* 529 N.W.2d 879, 881, (N.D.1995); *Hallock v. Mickels,* 507 N.W.2d 541, 545–46 (N.D.1993); *Guskjolen v. Guskjolen,* 499 N.W.2d 126, 128 (N.D.1993). In 1993, the Legislature amended NDCC 14–09–09.7(3) to require the Guidelines to establish the available criteria for rebutting the presumptive amount. *See* 1993 N.D. Laws ch. 152, § 12. To implement this directive, the Department amended NDAC 75–02–04.1–09(2) to list the exclusive factors available to rebut the presumptive amount.

Curtis asserts that a "plain language reading" of amended NDAC 75–02–04.1–09(1) now "provides legal authority for a fact finder to accept evidence on the daily living expenses of the obligor as a way of rebutting the Child Support Guidelines' base amount." We disagree.

Although bureaucratically phrased, NDAC 75–02–04.1–09(1) now plainly limits the factors available for rebuttal to those listed "in subsection 2," and plainly directs an obligor's "daily living expenses" cannot be used for rebuttal:

> The child support amount provided for under this chapter, except for subsection 2, is presumed to be the correct amount of child support. *No rebuttal of the guidelines may be based upon evidence of factors described or applied in this chapter,* except in subsection 2, *or upon:*
>
> a. *The subsistence needs,* work expenses, *and daily living expenses of the obligor;* or
>
> b. The income of the obligee, which is reflected in a substantial monetary and nonmonetary contribution to the child's basic care and needs by virtue of being a custodial parent.

(emphasis added). This conclusion is confirmed by NDAC 75–02–04.1–09(2):

The presumption that the amount of child support that would result from the application of this chapter, except for this subsection, is the correct amount of child support is rebutted only if a preponderance of the evidence establishes that a deviation from the guidelines is in the best interest of the supported children and:

. . .

j. The reduced ability of the obligor to pay child support due to a situation, over which the obligor has little or no control, which requires the obligor to incur a continued or fixed expense *for other than subsistence needs,* work expenses, *or daily living expenses,* and which is not otherwise described in this subsection; or

. . .

(emphasis added). Thus, a plain reading of the current Guidelines prohibits a court from considering an obligor's daily living expenses when setting child support.[1]

Curtis argues that public policy supports his interpretation of the amended Guidelines because they do not take into account the higher cost of living in California that reduces the buying power of his remaining funds for support of his California children. Without a cost-of-living adjustment, he argues, "significant inequities" will result between his California children and his North Dakota children, and these "inequities" will create "hard feelings and resentment between those two families making the building and maintaining of relationships almost impossible."

The policies in the Guidelines, however, are fixed by the Department and the Legislature, not by this Court. The Guidelines do not recognize Curtis's perceived "inequity," and they do not allow a cost-of-living adjustment for either an in-state or out-of-state obligor. Accordingly, we decline to permit distortion of the public policy actually expressed in the Guidelines.

---

1. In *Gray v. Gray,* 527 N.W.2d 268, 270 (N.D. 1995), we rejected a trial court's finding that "increased general subsistence expenses in an urban state such as California" could support a departure from the Guidelines, because "no evidence of comparable North Dakota expenses was offered or received." Because the record did not support the trial court's finding, we did not have to address whether the Guidelines precluded such a departure, as we decide here.

We affirm the amended decree increasing Curtis's child support obligation.

VANDE WALLE, C.J., MARING, J., and RALPH J. ERICKSTAD, Surrogate Judge, concur.

RALPH J. ERICKSTAD, Surrogate Judge, sitting in place of NEUMANN, J., disqualified.

SANDSTROM, Justice, concurring specially.

I agree with Curtis Horner that the public interest may be served by adjusting for a higher cost of living when it is necessary to secure a higher income, provided the adjusted higher income yields an increased benefit to the children. Such a change in policy would need to confront the difficulties in implementing it, and the benefits would need to outweigh the detriments.

I agree with the majority that the policy would need to be set by the legislature or the department. *See Helbling v. Helbling,* 541 N.W.2d 443, 449 (N.D.1995) (Sandstrom, J., concurring in the result).

I concur in the result.