1998 ND 99

**Wade James HARTY, Plaintiff and Appellee,**

v.

**Stephanie Jo HARTY, Defendant and Appellant.**

**Civil No. 970298.**

Supreme Court of North Dakota.

May 4, 1998.

**520**

Samuel S. Johnson, Wahpeton, for plaintiff and appellee.

DeAnn M. Pladson, of Maring Williams Law Office, Fargo, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Stephanie Jo Harty, herein referred to by her maiden name, Madsen, appealed from a divorce judgment awarding Wade Harty custody of the parties' minor daughter, Jourdan. We hold the trial court did not abuse its discretion in refusing to suppress the guardian ad litem's report or to appoint a new guardian ad litem. We further hold the trial court's custody and child support decisions were not clearly erroneous, and we affirm.

[¶ 2] Harty and Madsen were married in August 1992. Jourdan was born in October 1994. The parties separated in July 1996. Harty filed for divorce, and both parties sought custody of Jourdan. The court appointed Lisa Stenehjem as guardian ad litem to advocate Jourdan's best interests and to

"make recommendations for custody and visitation" in a report to be filed with the court. After Stenehjem filed a final report, Madsen moved to suppress the report and sought appointment of a new guardian ad litem, claiming Stenehjem was biased. The court denied the motion and, after a hearing, awarded Harty custody of Jourdan. The court also ordered Madsen to pay child support of $266 per month.

[¶ 3] On appeal, Madsen asserts the trial court erred in refusing to suppress Stenehjem's report and appoint a new guardian ad litem. She claims Stenehjem did not interview persons she requested her to interview, did not seek Madsen's version of adverse information received from Harty, and did not adequately consider the advantages of Madsen's revised work schedule to Madsen having custody of Jourdan.

[¶ 4] Under N.D.C.C. § 14-09-06.4 the court, in its discretion, may appoint a guardian ad litem to serve as an advocate of the child's best interests in a divorce action. We will not upset the trial court's decision regarding appointment of a guardian ad litem unless the court abused its discretion, by acting in an arbitrary, unreasonable, or unconscionable way. See Ludwig v. Burchill, 514 N.W.2d 674, 677–678 (N.D.1994). Stenehjem's report demonstrates careful and considered weighing of factors relevant to Jourdan's custody. The report provides specific instances of conduct to support Stenehjem's conclusions as to which parent had an advantage over the other on each relevant factor.

[¶ 5] Stenehjem considered both Harty and Madsen to be fit parents who have love and affection for Jourdan and the ability to provide and care for her. She believed, however, Harty would best provide a safe and caring environment for Jourdan. She observed Harty's first priority is Jourdan's safety and well-being, while Madsen's first priority is her own happiness. Stenehjem was particularly concerned, for example, about incidents where Madsen did not use a child car seat for Jourdan and left pills in a bag which was accessible to Jourdan. In her initial report, Stenehjem expressed concern

Madsen's work schedule could disrupt Jourdan's schedule while Harty's work was more conducive to a regular, uninterrupted schedule for Jourdan. When Stenehjem learned Madsen's work schedule had changed, she filed a supplemental report, stating the new schedule would "certainly improve the daily schedule for Jourdan, and give Jourdan continuity in her daily routines." Stenehjem noted, however, the new work schedule "does not change the instances in which Jourdan's safety has been jeopardized.... [Harty] is more child orientated and looks for Jourdan's safety and well being."

[¶ 6] Stenehjem testified she had about five to seven contacts with Madsen and about ten contacts with Harty before writing her report. She relied upon affidavits and completed questionnaires of persons Harty and Madsen asked her to contact. She did not feel it was helpful or necessary for her to personally interview each source. She said she does not ordinarily contact all of the parties' references because they will presumably give "glowing reports" about the parent who referred them, and those reports are not helpful in deciding which party would be the best custodial parent.

[¶ 7] In denying Madsen's request to suppress Stenehjem's report and appoint a new guardian ad litem, the trial court expressly found there was inadequate evidence of "bias" or that "anyone improperly influenced" the guardian ad litem. We conclude the trial court did not abuse its discretion in denying Madsen's motion.

[¶ 8] Madsen also claims Stenehjem was improperly contacted by Harty's attorney. In its interim order appointing Stenehjem guardian ad litem, the trial court stated counsel for either party "may only initiate contact with the Guardian ad Litem in writing and must provide a copy of any and all correspondence with enclosures to opposing counsel." While discussing Stenehjem's report, Madsen's attorney told Harty's attorney she thought the report was biased and the reference to Madsen's work schedule was inappropriate because Madsen had a new job and schedule. Harty's attorney asked if he should contact Stenehjem and ask her to prepare a supplemental report in view of this

new information. Madsen's attorney responded she did not think it would do any good but she would talk to her client about it. Later, Stenehjem was discussing matters in unrelated cases with Harty's attorney on the telephone when he told her there was new information in this case and she should talk to Harty about it. Stenehjem talked to Harty and learned Madsen had a new job and work schedule. Stenehjem then filed the supplemental report.

[¶ 9] Although Stenehjem at first mistakenly told Madsen she learned of the new job from Harty's attorney, Stenehjem subsequently corrected herself and told Madsen she received that information from Harty, not his attorney. The court found Harty's attorney did not improperly contact Stenehjem in violation of the court's order. The record evidence supports the court's finding.

[¶ 10] Madsen's ultimate assertion is the trial court's custody award is clearly erroneous. In a divorce proceeding, the trial court must award custody of a minor child based upon a determination of the best interests and welfare of the child. N.D.C.C. § 14–09–06.1. In determining what custody placement is in the best interests of a child, the court must consider and evaluate all relevant factors including, when applicable, those factors listed under N.D.C.C. § 14–09–06.2. The trial court's custody decision is a finding of fact which we will not reverse on appeal unless it is clearly erroneous. Rule 52(a), N.D.R.Civ.P.; *Kluck v. Kluck*, 1997 ND 41, ¶ 14, 561 N.W.2d 263. A finding of fact is clearly erroneous only if it is induced by an erroneous view of the law, if there is no evidence to support it, or if the reviewing court on the entire evidence is left with a definite and firm conviction a mistake has been made. *Id.* The trial court is vested with substantial discretion in matters of custody, and the appealing party bears a heavy burden of demonstrating the court's decision is clearly erroneous. *See Reimche v. Reimche*, 1997 ND 138, ¶ 12, 566 N.W.2d 790.

[¶ 11] The court found these parents were about equal in their ability to care for their daughter. However, the court found Harty has the greater capacity and disposition to provide Jourdan with love, affection, guidance, and continued education. The court

specifically found Madsen twice failed to use a car seat for Jourdan, failed to properly notify a day-care provider of her whereabouts so she could be reached in an emergency, and failed to inform her mother about pills she left in a bag which was accessible by Jourdan. The court found these actions demonstrate Madsen's "failure to properly safeguard the minor child in certain situations."

[¶ 12] The court awarded Harty physical custody of Jourdan and awarded Madsen visitations every other weekend, every other Wednesday, and one additional overnight visitation during weeks in which she does not have weekend visitation. The court also awarded Madsen visitation "any other time when the other party cannot be with the minor child." From the bench, the court told Harty that Madsen must be the "first option" to take custody of Jourdan whenever Harty is going to be out of town or otherwise unavailable to care for Jourdan.

[¶ 13] We conclude the record evidence supports the trial court's finding both these parents are fit and capable of providing for Jourdan's needs. However, the evidence also supports the court's findings Madsen has on some occasions demonstrated inadequate concern for Jourdan's safety and Harty is better able to provide a safe environment for Jourdan where her welfare is first priority. Having reviewed the entire record, we are not left with a firm and definite conviction the trial court made a mistake awarding Harty custody of Jourdan.

[¶ 14] Finally, Madsen asserts the trial court erred in ordering her to pay day-care expenses in addition to monthly support payments. The trial court's determination on child support is a finding of fact and will be affirmed unless it is clearly erroneous. Rule 52(a), N.D.R.Civ.P.; *Interest of L.D.C.*, 1997 ND 104, ¶ 4, 564 N.W.2d 298. N.D.C.C. § 14-09-09.7(3) creates a rebuttable presumption the amount calculated under the child support guidelines is the correct amount of support.

[¶ 15] Madsen's argument mischaracterizes the trial court's decision. Following the guidelines schedule, the trial court ordered Madsen to pay child support of $266 per month. The court additionally stated:

"If the child is in the nominal care of either [Harty or Madsen] for more than twelve (12) hours of a particular day, that person shall pay for said day care costs for that day."

The trial court did not order Madsen to pay for day-care expenses when Jourdan is in Harty's custody. Rather, the court's order merely clarifies Madsen is responsible for any day-care expenses incurred when Jourdan is in her custody. The court's order is entirely consistent with the guidelines, which expressly prohibit an abatement of support payments for temporary periods in which the child resides with the noncustodial parent. *See* N.D. Admin. Code § 75-02-04.1-02(2); *Edwards v. Edwards*, 1997 ND 94, ¶ 15, 563 N.W.2d 394. If Madsen uses day care while Jourdan is in her custody for more than 12 hours on a particular day, Madsen is responsible for the cost of that care and is not entitled to an abatement of her support obligation. We conclude the trial court's support award, including the requirement Madsen pay for day care while Jourdan is in her custody, is not clearly erroneous.

[¶ 16] The judgment is affirmed.

[¶ 17] SANDSTROM, NEUMANN and MESCHKE, JJ., and DAVID W. NELSON, District Judge, concur.

[¶ 18] DAVID W. NELSON, District Judge, sitting in place of MARING, J., disqualified.