1998 ND 163

**Gene JARVIS, Plaintiff and Appellant,**

v.

**Jennifer JARVIS, Defendant and Appellee.**

**Civil No. 970346.**

Supreme Court of North Dakota.

Sept. 15, 1998.

Randall Knutson (argued), of Zenas Baer & Associates, Hawley, and Alden H. Gjevre, Moorhead, for plaintiff and appellant.

Maureen Holman, of Serkland, Lundberg, Erickson, Marcil & McLean, Ltd., Fargo, for defendant and appellee.

NEUMANN, Justice.

[¶ 1] Gene Jarvis appeals from an order denying his motion for reconsideration, amended findings and judgment, a new trial, and a stay in his divorce action against Jennifer Jarvis. We direct the judgment be modified, and we affirm the order.

I

[¶ 2] The parties married in 1980. Two children, Sara and Andrea, were born during the marriage in 1988 and 1992. When the parties separated in 1996, Jennifer Jarvis was earning approximately $7.58 per hour in the business office at MeritCare, and Gene Jarvis was earning $7.25 per hour at Dakota Food Equipment. Gene Jarvis was also earning about $300 per month working at a part-time job, which he quit shortly after the parties separated.

[¶ 3] Gene Jarvis sued for a divorce on April 2, 1996, and Jennifer Jarvis later counterclaimed for a divorce. The parties stipulated to an interim order giving physical custody of the children to her and liberal visitation to him; requiring him to pay $300 per month in child support and $100 per month for daycare in May, June, and July; requiring her to maintain health insurance for herself and the children; and requiring the parties to share equally any noncovered health care expenses for the children.

[¶ 4] The judgment entered after trial granted Jennifer Jarvis a divorce; divided the parties' marital property; awarded her custody of the children, with reasonable visitation for Gene Jarvis; required him to pay child support of $356 per month; and required each party to pay one-half of "daycare expenses (currently $480 per month); preschool tuition for Andrea (currently $567); the monthly cost for Jennifer providing healthcare insurance for the children (currently $126 per month); one-half of all uncovered medical, dental, prescription, orthodontic, and eyeglass expenses."

[¶ 5] Gene Jarvis moved for reconsideration; amendment of the findings of fact, conclusions of law, and judgment; a new trial; and a stay. The trial court denied the motion, and Gene Jarvis appealed the denial to this Court.

[¶ 6] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27-05-06. The appeal was timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 28-27-01.

II

[¶ 7] The trial court's determinations on child custody and child support are ordinarily treated as findings of fact, which are not reversed on appeal unless they are clearly erroneous. See, e.g., Harty v. Harty, 1998 ND 99, ¶¶ 10, 14, 578 N.W.2d 519. That standard does not apply in this case, however, because Gene Jarvis did not appeal from the judgment, but from the denial of his post-trial motion:

> We recognize that the clearly erroneous rule does not apply in this instance because there is no appeal from the judgment, but only from the order denying a motion for a new trial. A refusal to grant a new trial to correct a judgment based upon clearly erroneous findings of fact may, however, be an abuse of discretion. On the other hand, we have observed that the fact that a trial court may have made a mistake in the law when entering a judgment does not necessarily justify setting the judgment aside under a Rule 60(b), N.D.R.Civ.P., proceeding. See First Nat'l Bank of Crosby v. Bjorgen, 389 N.W.2d 789 (N.D.1986).

Kaiser v. Kaiser, 474 N.W.2d 63, 65 n. 2 (N.D.1991).

[¶ 8] We do not reverse the denial of a motion for a new trial unless the trial

court abused its discretion. *Barnes v. Mitzel Builders, Inc.*, 526 N.W.2d 244, 246 (N.D. 1995). Motions to reconsider are like motions to alter or amend judgments under N.D.R.Civ.P. 59. *Austin v. Towne*, 1997 ND 59, ¶ 7, 560 N.W.2d 895. A decision on a motion under N.D.R.Civ.P. 59 is within the sound discretion of the trial court, and denial of a motion under N.D.R.Civ.P. 59 will not be reversed, absent a manifest abuse of discretion. *Id.* ¶ 8. A trial court abuses its discretion if it acts in an arbitrary, capricious, or unreasonable manner, or misinterprets or misapplies the law. *Id.* ¶ 8.

### III

[¶ 9] Gene Jarvis first contends the trial court erred in ordering him to pay one-half ($63 per month) of Jennifer Jarvis's medical insurance premiums and one-half ($45 per month) of the children's noncovered medical expenses, and in failing to credit those amounts in determining his net income for calculating his child support obligation. In her brief, Jennifer Jarvis conceded Gene Jarvis's health insurance obligation should only be $31.50 per month. We direct the judgment be so modified.

[¶ 10] In determining Gene Jarvis's net monthly income of $1,227, for which the presumptively correct child support obligation for two children under the child support guidelines is $356 per month, the trial court deducted his obligations for Medicare, FICA, and income taxes from his gross income. The trial court did not deduct the portion of the health insurance premiums Gene Jarvis was paying to afford coverage for the children. N.D. Admin. Code § 75–02–04.1–01(7)(d) requires such payments be deducted in determining a child support obligor's net income.

[¶ 11] Applying the proper deduction under N.D. Admin. Code § 75–02–04.1–01(7)(d) for a portion of the health insurance premiums does not, however, change Gene Jarvis's child support obligation. Deducting the $31.50 per month conceded by Jennifer Jarvis to be the correct amount for his health insurance obligation results in a net monthly income of $1,195.50. Under N.D. Admin. Code § 75–02–04.1–02(5), "an obligor's monthly net income amount ending in fifty dollars or more must be rounded up to the nearest one hundred dollars, and must otherwise be rounded down to the nearest one hundred dollars." Thus, Gene Jarvis's net monthly income must be rounded up to $1,200 per month, which, under N.D. Admin. Code § 75–02–04.1–10, results in a child support obligation of $356 per month for two children, which is his present obligation under the judgment.

[¶ 12] Regarding the requirement he pay one-half of the children's medical expenses not covered by health insurance, Gene Jarvis argues the trial court did not explain or make sufficient findings to justify an upward deviation from the guidelines.

[¶ 13] Prior to the state adopting guidelines under the Family Support Act of 1988, child support awards were subject mainly to the discretion of the judge. *See* Laura W. Morgan, *Child Support Guidelines: Interpretation and Application* § 1.01 (1996). Generally, a judge would determine the monthly support award based on the needs of the child, and make a similar determination on the medical needs of the child. *See, e.g., Nichols v. Tedder*, 547 So.2d 766, 768–69 (Miss.1989) (stating "child support is but one type of expense which the court may award for the care and maintenance of children," and that medical, dental, optical, and psychiatric expenses are other properly awarded expenses).

[¶ 14] In 1988, the federal government required the states to enact mandatory ("presumptively correct") child support guidelines, in order to continue to receive federal funding of Aid to Families with Dependent Children (AFDC). Family Support Act of 1988, Pub.L. 100–485, codified primarily at 42 U.S.C. §§ 654, 666–67. The federal government also required the states to require provision for a "child[ren]'s health care needs, through health insurance coverage or other means." *See* 45 C.F.R. § 302.56(c)(3).

[¶ 15] To comply with the federal requirements in the Budget Reconciliation Act of 1987 and the Family Support Act of 1988, North Dakota passed Senate Bill 2245 in 1989. *Hearing on S.B. 2245 Before the House Human Services and Veterans Af-*

*fairs Comm.*, 51st N.D. Legis. Sess. (Mar. 10, 1989). The legislature's bill summary of S.B. 2245 states:

Generally, this bill:

As amended, establishes provisions relating to the direct payment of child support payments to the clerk of court, rebuttable presumptions that a child support amount in compliance with support guidelines is the correct amount, immediate withholding of income for payment of child support, periodic review of child support orders and notice of the review results, health insurance coverage for a child who is the subject of a child support order, and genetic rather than blood test for purposes of determining paternity. The bill has varying effective dates for different sections of the bill.

*Bill Summary of S.B. 2245*, 51st N.D. Legis. Sess. (Mar. 21, 1989).

[¶ 16] The North Dakota child support statutes and guidelines do not contain specific references to uninsured medical expenses. However, other state courts have addressed the issue of uninsured medical expenses awarded in conjunction with a child support award. These state courts have found it within the trial court's discretion to require, in addition to the child support award, payment of uninsured medical expenses. *See generally Lulay v. Lulay,* 583 N.E.2d 171, 172 (Ind.Ct.App.1991) (finding the commentary to the Child Support Guidelines allows for apportionment of uninsured medical expenses because the guidelines do not mandate any specific treatment of these expenses); *Holdsworth v. Holdsworth,* 621 So.2d 71, 78 and n. 1 (La.Ct.App. 1993) (holding there was no error when medical expenses described by the trial court as "medical and dental expenses not covered by insurance" were apportioned half to each party, in addition to the child sup-

port award as determined under the guidelines); *Jamison v. Jamison,* 845 S.W.2d 133, 136–37 (Mo.Ct.App.1993) (holding it was within the court's discretion to order the obligor to pay half of the uninsured medical expenses, in addition to the child support award . determined under the guidelines); *Lawrence v. Tise,* 107 N.C.App. 140, 419 S.E.2d 176, 183 (1992) (holding ordinary medical expenses not covered by insurance are to be apportioned between the parties at the discretion of the trial court, in addition to the child support award as determined by the guidelines). *But see Hazuga v. Hazuga,* 648 N.E.2d 391, 395 n. 1 (Ind.Ct.App.1995) (noting that the guidelines had been amended and therefore declined to follow *Lulay v. Lulay*); *Division of Family Services ex rel. J.L.M. by C.A.M. v. Buttram,* 924 S.W.2d 870, 871 (Mo.Ct.App.1996) (ordering father to pay 50 percent of all uncovered medical expenses was a deviation under the guidelines). These cases generally hold uninsured medical expenses are properly apportioned in conjunction with a child support award under their respective guidelines. The North Dakota guidelines are unique from all other states in their treatment of "medical expenses." Morgan, *supra,* § 3.01[b][1] n. 21 (Supp.1998). Therefore, while other states may offer guidance on the issue, we must still determine the requirements under North Dakota law and its child support guidelines.

[¶ 17] The North Dakota Century Code addresses medical expenses with regard to child support at N.D.C.C. § 14–09–08.10, providing: [1]

1. Unless the obligee has comparable or better group dependent health insurance coverage available at no or nominal cost, the court shall order the obligor to name the minor child as beneficiary on any health insurance

---

1. Section 14–09–08.10, N.D.C.C., was amended subsequent to this action. In its amended form, it provides:

Order. Each order entered under this code for the support of a minor child must include a provision for health insurance coverage for that child.
1. Except as provided in subsection 2, the order must require the obligor to provide

satisfactory health insurance coverage whenever that coverage is available at reasonable cost or becomes available at reasonable cost.
2. If the obligee is an individual with physical custody of the child, the obligee must be required to provide satisfactory health insurance whenever that coverage is available at no or nominal cost.
1997 N.D. Sess. Laws ch. 404, § 17.

plan that is available to the obligor at no or nominal cost.

2. If the court finds that dependent health insurance is not available to the obligor or obligee at no or nominal cost, the court may require the obligor to obtain dependent health insurance, or to be liable for reasonable and necessary medical expenses of the child.

[¶ 18] Medical expenses can be separated into three categories: payments made for medical insurance for the child; payments made for uninsured medical expenses incurred, such as checkups or medication for the child; and any payments made for extraordinary medical expenses of the child. *See* Morgan, *supra,* § 3.01[b][3] n. 40 (Supp. 1998). Under the child support guidelines, North Dakota has addressed all three categories relating to medical expenses. The guidelines address health insurance, N.D. Admin. Code § 75–02–04.1–01(7)(d), uninsured expenses, *see* N.D. Admin. Code § 75–02–04.1–01(7)(e), and extraordinary expenses, *see* N.D. Admin. Code § 75–02–04.1–09(2)(d).

[¶ 19] N.D. Admin. Code § 75–02–04.1–01(7)(d) of the guidelines, dealing with medical insurance, provides:

7. "Net income" means total gross monthly income less:

    d. A portion of premium payments, made by the person whose income is being determined, for health insurance policies or health service contracts, intended to afford coverage for the child or children for whom support is being sought, determined by dividing the payment by the total number of persons covered and multiplying the result times the number of such children.

This provision allows for a deduction from the obligor's net income of premiums paid for medical insurance for a child subject to the support order. *Shipley v. Shipley,* 509 N.W.2d 49, 53 (N.D.1993).

[¶ 20] Next, N.D. Admin. Code § 75–02–04.1–01(7)(e) of the guidelines, dealing with medical expenses, provides:

7. "Net income" means total gross monthly income less:

    e. Payments made on actual medical expenses of the child or children for whom support is being sought.

This provision allows the obligor to deduct from gross income any actual medical expenses paid for a child subject to the support award. *Withey v. Hager,* 1997 ND 225, ¶ 9, 571 N.W.2d 142.

[¶ 21] And finally, N.D. Admin. Code § 75–02–04.1–09(2)(d) of the guidelines, dealing with extraordinary expenses, provides:

2. The presumption that the amount of child support that would result from the application of this chapter, except for this subsection, is the correct amount of child support is rebutted only if a preponderance of the evidence establishes that a deviation from the guidelines is in the best interest of the supported children and:

    d. The increased needs of children with disabling conditions or chronic illness.

This section allows a deviation from the presumptively correct child support amount for the "increased needs" of a child with a disabling condition or chronic illness.

[¶ 22] The guidelines do not contain a specific reference to uninsured medical costs, but "rules have the force and effect of law." N.D.C.C. § 28–32–03(3). "Therefore, 'we rely upon the principles of statutory construction when interpreting administrative rules and regulations.'" *Perala v. Carlson,* 520 N.W.2d 839, 842 (N.D.1994) (quoting *Madler v. McKenzie County,* 496 N.W.2d 17, 21 (N.D.1993)). Words are to be used and understood in their ordinary sense. N.D.C.C. § 1–02–02. When "increased needs" is compared with "medical expenses," as used in the guidelines, it is obvious "increased needs" connotes the extraordinary or unexpected, whereas "medical expenses" implies all regular costs associated with providing health care to the child. *See generally* Morgan, *supra,* § 3.01[b][3] and n. 40 (Supp.1998).

[¶ 23] The North Dakota guidelines expressly allow the obligor to deduct from his net income any insurance premiums and any actual medical expenses paid. N.D. Ad-

min. Code § 75–02–04.1–01(7)(d) and (e). Furthermore, the Department of Human Services has provided an exclusive listing of factors available to rebut the presumptively correct amount of child support. *Horner v. Horner*, 549 N.W.2d 669, 670 (N.D.1996). This exclusive listing includes "the increased needs of children with disabling conditions or chronic illness," but makes no mention of medical insurance premiums or uninsured medical expenses. N.D. Admin. Code § 75–02–04.1–09(2)(d). This is because the guidelines treat medical insurance premiums and any other actual medical expenses, such as uninsured medical expenses, as not being included in the child support award. Hence they are deductions from gross income, and not criteria for rebuttal of a guideline child support amount.

[¶ 24] To treat uninsured medical expenses as included in the presumptively correct child support amount would produce an anomalous and unjust result. Under the guidelines, the expenses are to be treated as a deduction from gross income, thereby reducing the amount of child support to be received. N.D. Admin. Code § 75–02–04.1–01(7)(e). Yet, if we were to accept Gene Jarvis's argument that uninsured expenses are included in the presumptively correct amount of support, it would produce a situation in which the expenses are used to reduce the obligor's child support income and at the same time are also considered part of child support itself, thereby further reducing the child support award. Put simply, Gene Jarvis seeks double credit for the uninsured medical expenses he pays.

[¶ 25] In light of the historical definition of child support, the treatment of uninsured medical expenses by other state courts, and the treatment of uninsured medical expenses by the North Dakota child support guidelines, it is apparent N.D.C.C. § 14–09–08.10 authorizes the award of uninsured medical expenses in conjunction with the child support award. This avoids the anomalous effects mentioned and properly aligns North Dakota law with the state and federal government's intent of providing for the health care needs of children. *See, e.g.,* N.D.C.C. §§ 14–09–08.11 to 14–09–08.15; 45 C.F.R. § 302.56(c)(3). To the extent *Dickson v. Dickson,* 1997 ND 167, 568 N.W.2d 284, is inconsistent with this holding, it is overruled.

[¶ 26] In denying the new trial motion, the trial court found the requirement that the obligor pay half of the uninsured medical expenses appropriate and within the law. We conclude the trial court did not abuse its discretion in this regard. Because the uninsured medical expenses will not reduce the obligor's net income to a level that changes the awarded child support we need not remand for a redetermination of net income.[2]

### IV

[¶ 27] Gene Jarvis contends the trial court erred in determining his obligations for child support, daycare, medical expenses, medical insurance, and preschool expenses without making specific findings supporting a deviation from the guideline amount and without balancing the children's needs with his ability to pay.

[¶ 28] Gene Jarvis agreed to pay one-half of his youngest daughter's preschool tuition of $567 which Jennifer Jarvis had already paid with a loan from her father. We have already determined the child support obligation ordered by the trial court is the proper amount, based on Gene Jarvis's net income as determined after taking the appropriate deductions from his gross income.

[¶ 29] The trial court ordered Gene Jarvis to pay one-half of the children's daycare cost of $480 per month, in addition to child support of $356 per month. "N.D.C.C. § 14–09–09.7(3) creates a rebuttable presumption the amount calculated under the child support guidelines is the correct amount of support." *Harty v. Harty,* 1998 ND 99, ¶ 14, 578 N.W.2d 519. The cost of a child's daycare may justify an upward deviation from the guidelines' presumptively correct support amount. *Reinecke v. Griffeth,* 533 N.W.2d 695, 701 (N.D.1995) (citing *Pera-*

---

**2.** The obligor's current net income is $1,195.50. After we subtract the monthly uninsured expenses of $45, the net income is $1,150.50. Under the guidelines, we must round to the nearest hundred dollars, which would be $1,200. N.D. Admin. Code § 75–02–04.1–02(5). This is the same net income used to determine his current child support obligation.

*la,* 520 N.W.2d at 841). If a trial court considers the best interests of the children and deviates from the guideline amount of child support, it must make specific findings demonstrating why the guideline amount has been rebutted. *Id.* at 700–01. "[F]indings are adequate if we are able to understand from them the factual basis for the trial court's determination." *Wolf v. Wolf,* 474 N.W.2d 257, 258 (N.D.1991). "[W]e have relied on implied findings of fact when the record has enabled us to understand 'the factual determination made by the trial court and the basis for its conclusions of law and judgment entered thereon.'" *Reinecke,* at 698 (quoting *All Seasons Water Users v. Northern Improvement Co.,* 399 N.W.2d 278, 281 (N.D.1987)).

[¶ 30] Jennifer Jarvis is working full time, netting approximately $975 per month, and incurring daycare expenses of $480 per month. In light of the parties' incomes, it is clearly in the children's best interests that Jennifer Jarvis continue working, and it is apparent she cannot, even with the required child support, afford the full cost of the children's daycare expenses. "The court did not use the magic words 'the guidelines are hereby rebutted,' but the effect of its finding is the same: the increased child care expense resulting from [Andrea's] preschool age and [Jennifer Jarvis's] full-time employment requires an increase in [Gene Jarvis's] support obligation from the presumptive amount." *Perala,* 520 N.W.2d at 843. Therefore, we conclude the trial court properly determined that the presumptive amount of child support under the guidelines was rebutted by the full cost of Andrea's child care. We further conclude no productive purpose would be served by remanding for additional findings on this matter.

[¶ 31] Gene Jarvis contends the trial court deviated from the guideline amount of child support without considering his ability to pay in light of his needs to pay for healthcare, attorney fees,[3] housing, food, and other necessities. The current child support guidelines prohibit a court from considering an obligor's daily living expenses when setting child support. *Horner,* 549 N.W.2d at 670. Gene Jarvis has not shown any relevant ground upon which to base a downward deviation from the presumptive amount of child support under N.D. Admin. Code § 75–02–04.1–09. In denying the motion for a new trial, the trial court explained:

> Gene's net monthly income is $1,227. (Finding # 28). Until the parties' separation, Gene also worked part-time at a second job earning over $3,000 per year, (Finding # 13). . . .
>
> . . . .
>
> Gene is capable of earning additional income. He voluntarily quit his part-time job the week the parties separated. All these obligations imposed by the Court on Gene are expenses on behalf of his children. Gene is fully capable of providing and contributing these expenses.

We are not persuaded the trial court failed to consider Gene Jarvis's ability to pay the amounts ordered to the extent permissible under the guidelines.

V

[¶ 32] Gene Jarvis contends the trial court has deprived him of his rights under the Fifth Amendment to the United States Constitution by depriving him of life, liberty, and property without due process of law. He argues his "ability to live freely and with liberty is being curtailed by the trial court by the oppressive amounts of money he is being ordered to pay" and "[e]nforcement of this court's order would deprive Gene Jarvis of significant property interests and his right to have enough income to feed, clothe, and shelter himself."

[¶ 33] Gene Jarvis has cited only *Bolling v. Sharpe,* 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954), for the proposition that liberty is not confined to freedom from bodily restraint but extends to the full range of conduct an individual is free to pursue, and *Federal Deposit Ins. Corp. v. Morrison,* 747 F.2d 610 (11th Cir.1984), for the proposition

---

3. Gene Jarvis alleged in his brief he is paying attorney fees of $262 per month. He testified at trial he had no unpaid attorney fees at that time.

that the Due Process Clause of the Fifth Amendment extends protection to property rights less substantial than full legal title. Those are unassailable propositions that do not, however, support Gene Jarvis's ultimate conclusion. He has provided neither persuasive authority, nor persuasive reasoning. Without more, his perfunctory constitutional argument is without merit, and we will not further address it. Parties mounting constitutional challenges should bring up the heavy artillery or forego the attack entirely. *Trollwood Village Ltd. Partnership v. Cass County Bd. of County Comm'rs*, 557 N.W.2d 732, 736 n. 5 (N.D.1996); *Southern Valley Grain Dealers Ass'n v. Board of County Comm'rs of Richland County*, 257 N.W.2d 425, 434 (N.D.1977).

## VI

[¶ 34] Gene Jarvis contends the trial court erred in granting physical custody of the children to Jennifer Jarvis, rather than granting joint physical custody to both parties. He testified the children "should see both parents half the time and also live with the parents half the time" and proposed that he "would have the children half the time and pay one half the expenses."

[¶ 35] "[S]plit or alternating custody is not per se erroneous." *Kaloupek v. Burfening*, 440 N.W.2d 496, 497 (N.D.1989). However, to support an alternating custody arrangement, we require a factual finding it is in the child's best interest, "because it is generally not in the child's best interest to be bandied back and forth between parents in a rotating physical custody arrangement." *Kasprowicz v. Kasprowicz*, 1998 ND 68, ¶ 15, 575 N.W.2d 921.

[¶ 36] "Legal writers and child development professionals are in general agreement that a joint custody arrangement can work only if the parents are able to cooperate." 2 John P. McCahey et al., *Child Custody & Visitation Law and Practice* § 13.01[1] (1998). "The success of any custody resolution must ultimately rest with the parents. If they cannot set aside their differences and conflict[s] when dealing with their roles as parents, the innocent child will most surely suffer." *Kaloupek*, 440 N.W.2d at 499.

[¶ 37] In denying Gene Jarvis's motion for a new trial, the trial court said, "Jennifer is definitely the primary caretaker." The court noted its "expressed concern regarding Gene's anger and hostility toward Jennifer," and further explained: "Under these circumstances, splitting custody and authority over decisions affecting the children could only continue the animosity between the parties. It is in the children's best interest that they be in the custody of Jennifer and that Gene spend regular quality time with them." In light of Jennifer Jarvis's testimony indicating Gene Jarvis is "very angry that I'm in the house and he's not in the house;" she and Gene Jarvis communicate "[v]ery little;" and they "would need to communicate a lot" with a joint physical custody arrangement, we conclude the trial court did not abuse its discretion by denying the motion for a new trial on this matter.

## VII

[¶ 38] We direct the judgment be modified to require Gene Jarvis to pay $31.50 per month toward the children's health insurance premiums. With the judgment so modified, we affirm the trial court's order denying Gene Jarvis's post-trial motions.

[¶ 39] MARING and MESCHKE, JJ., concur.

VANDE WALLE, Chief Justice, concurring in the result.

[¶ 40] The trial judge did not order Gene Jarvis to pay the entire portion of the health insurance premium for the children. The trial judge could have required Gene Jarvis to pay the entire amount of the premium under N.D.C.C. § 14–09–08.10. The trial judge did require Gene Jarvis to pay one half of the uncovered medical expenses for the children. I see no inequity in this result and I concur in the result reached by the majority opinion.

[¶ 41] This case does point out the problems in attempting to reconcile statutes enacted by the Legislature with administrative rules the Legislature has authorized an agency to adopt. While the Legislature has left it

to the Department of Human Services to adopt "guidelines" for child support, N.D.C.C. § 14–09–09.7, the Legislature has also enacted legislation on a specific aspect of those guidelines, i.e., health insurance, in N.D.C.C. § 14–09–08.10. The majority is one attempt to reconcile the statute with the guidelines. The dissent is another. In view of the fact the trial judge ordered both Gene Jarvis and Jennifer Jarvis to share the costs of health insurance and the uncovered medical costs when it could have ordered Gene to pay all of the health insurance premiums for the children, an order from which Jennifer Jarvis has not appealed and which I believe to be reasonable and valid, I would not further attempt to reconcile the statutes and the guidelines or determine whether or not *Dickson v. Dickson*, 1997 ND 167, 568 N.W.2d 284 is inconsistent and should be overruled. The Legislature and the Department of Human Services should resolve the issue.

[¶ 42] Gerald W. VandeWalle, C.J.

SANDSTROM, Justice, dissenting.

[¶ 43] Because the majority ignores controlling North Dakota precedent, is contrary to federal and state legislative and administrative history, mischaracterizes the holdings of cited cases, and invites the problems unfettered discretion created for children, I dissent.

I

[¶ 44] In *Dickson v. Dickson*, 1997 ND 167, ¶ 17, 568 N.W.2d 284, we said:

[T]he court's order of additional payment of noncovered medical expenses is an upward deviation from the guideline amount. N.D. Admin. Code § 75–02–04.1–09(2) provides a list of criteria that would justify a deviation from the amount of child support as calculated under the guidelines. *Dalin v. Dalin*, 545 N.W.2d 785, 787 (N.D. 1996). Nothing in the record indicates any of these criteria would apply in this case. One of the items justifying an upward deviation is "[t]he increased needs of children with disabling conditions or chronic illness." N.D. Admin. Code § 75–02–04.1–09(2)(d). Stephanie Dickson offered no evidence of this or other grounds justi-

fying an upward deviation from the guidelines, and offered no authority under the child support guidelines to justify the payment she seeks.

We also discussed the credit to income:

Under N.D. Admin. Code § 75–02–04.1–01(7)(e), payments of actual medical expenses are credited toward the obligor's monthly gross income for purposes of calculating the obligor's net monthly income. *Steffes v. Steffes*, 1997 ND 49, ¶ 35, 560 N.W.2d 888. The trial court did not make findings of monthly gross income or indicate the medical expenses were calculated as they should have been under the guidelines in computing Thomas Dickson's net monthly income. *See* N.D. Admin. Code § 75–02–04.1–01(7) (" 'Net income' means total gross monthly income less: ... (e) Payments made on actual medical expenses of the child or children for whom support is being sought"); *see also Perala v. Carlson*, 520 N.W.2d 839, 841 (N.D.1994) (" 'factors identified as not having been considered in developing the child support guidelines schedule ... may be included as criteria' " elsewhere (quoting Attorney General Opinion 93–22 (1993))).

*Id.* at ¶ 17 n. 2.

[¶ 45] In determining Gene Jarvis's net monthly income of $1,227, for which the presumptively correct child support obligation for two children under the Child Support Guidelines is $356 per month, the trial court deducted his obligations for Medicare, FICA, and income taxes from his gross income. The trial court did not deduct the portion of the health insurance premiums Gene Jarvis was paying to provide coverage for the children, which N.D. Admin. Code § 75–02–04.1–01 requires to be deducted in determining a child support obligor's net income.

[¶ 46] Applying the proper deduction under N.D. Admin. Code § 75–02–04.1–01 for a portion of the health insurance premiums does not, however, change Gene Jarvis's child support obligation. Deducting the $31.50 per month conceded by Jennifer Jarvis to be the correct amount for his health insurance obligation results in a net monthly income of $1,195.50. Under N.D. Amin. Code § 75–02–

04.1–02(5), "an obligor's monthly net income amount ending in fifty dollars or more must be rounded up to the nearest one hundred dollars, and must otherwise be rounded down to the nearest one hundred dollars." Thus, Gene Jarvis's net monthly income must be rounded up to $1,200 per month, which, under N.D. Admin. Code § 75–02–04.1–10, results in a child support obligation of $356 per month for two children, which is his present obligation under the judgment.

[¶ 47] Regarding the requirement he pay one-half of the children's medical expenses not covered by health insurance, Gene Jarvis argues "the trial court did not explain or make sufficient findings as to why there was an upward deviation from the guidelines to allow for this additional expense." Payments of actual medical expenses are deducted from an obligor's monthly gross income for purposes of calculating the obligor's net monthly income and resulting Guideline child support obligation. *Withey v. Hager*, 1997 ND 225, ¶ 9, 571 N.W.2d 142; *Dickson*, 1997 ND 167, ¶ 17 n. 2, 568 N.W.2d 284. An order requiring a noncustodial parent to pay noncovered medical expenses in addition to child support in the presumptive amount under the Guidelines is an upward deviation from the Guideline amount. *Dickson*, at ¶ 17. To deviate from the Guideline amount of child support, a trial court must make specific findings demonstrating why the Guideline amount has been rebutted. *Reinecke v. Griffeth*, 533 N.W.2d 695, 700–01 (N.D.1995).

[¶ 48] In denying the new trial motion, the trial court briefly addressed health insurance and noncovered medical expenses:

> Further, N.D.C.C. § 14–09–08.10(2), provides that a child support obligor who does not have health insurance available at no or nominal cost, may be ordered to obtain dependent health insurance or be liable for reasonable and necessary medical expenses of the child. The Court's requirement that Gene pay these obligations for the benefit of his children is certainly appropriate and within the law.

The trial court did not make a finding supporting an upward deviation from the Guideline amount for noncovered medical expenses in accordance with N.D. Admin. Code § 75–02–04.1–09(2), which allows deviations in specified circumstances. No reason for an upward deviation for noncovered medical expenses is apparent from this review, and Jennifer Jarvis has not suggested one upon which the trial court may have relied. In view of the lack of findings, the trial court abused its discretion in this regard.

## II

[¶ 49] Although the majority in a passing sentence cavalierly overrules *Dickson* without analysis, *Dickson* is clearly supported by federal and state legislative and administrative history.

[¶ 50] In understanding why *Dickson* is correct, it is important to review the history of the Child Support Guidelines, now repeated by the majority with material omissions, alterations, and mischaracterizations.

[¶ 51] In 1988, the federal government required the states to enact mandatory ("presumptively correct") child support guidelines, in order to continue to receive federal funding of Aid to Families with Dependent Children (AFDC). Family Support Act of 1988, Pub.L. 100–485, codified primarily at 42 U.S.C. §§ 654, 666–667. The federal government also required the states to require the providing of health insurance coverage in child support orders in most cases. *See* 45 C.F.R. § 302.56(c)(3).

[¶ 52] The required child support guidelines were intended to provide adequate child support, while providing consistency and certainty to avoid the likelihood of litigation (and disrespect for and disregard of court judgments) encouraged by unfettered discretion. *See* Laura W. Morgan, *Child Support Guidelines: Interpretation and Application* (1998) §§ 1.01, 1.02(e).

[¶ 53] Under federal regulations, states must require procuring of reasonably available health insurance for dependent children covered by the child support guidelines. 45 C.F.R. § 302.56(c)(3); Morgan, *supra*, § 3.01(a). A major reason for requiring health insurance was to reduce federal health insurance costs in IV–D cases. *See* 45 C.F.R. § 302.56(c)(3). Coverage was broadened to cover all cases to avoid equal protec-

tion problems. In addition, the federal government provided means to compel securing coverage, such as ordering the party required to secure insurance coverage to pay the actual expenses if available coverage is not secured.

[¶ 54] In the federal child support scheme, child health care expenses are divided into costs covered by insurance, ordinary costs not covered by insurance (such as deductibles and co-payments), and extraordinary costs. Morgan, *supra*, § 3.01. Insurance coverage must be required when available at a nominal or reasonable cost. 45 C.F.R. § 302.56(c)(3); Morgan, *supra*, § 3.01(a). Ordinary costs not covered by insurance (such as deductibles and co-payments) are factored into the "normal" guideline support amounts. Morgan, *supra*, § 3.01(b); *Division of Family Services ex rel. J.L.M. by C.A.M. v. Buttram*, 924 S.W.2d 870, 871 (Mo. Ct.App.1996) (ordering father to pay 50 percent of all uncovered medical expenses was improper deviation); *Chirls v. Chirls*, 170 A.D.2d 641, 566 N.Y.S.2d 931, 932–33, *cert. denied*, 78 N.Y.2d 853, 573 N.Y.S.2d 467, 577 N.E.2d 1059 (N.Y.1991) (ordinary and routine medical expenses are included in the basic award). Deviation from the presumptively correct guideline amount is permitted for extraordinary costs not covered by insurance. *See* Morgan, *supra*, § 3.01(b).

[¶ 55] Ordering an obligor to pay uncovered medical expenses is a deviation from the presumptively correct child support amount. *Chirls*, 566 N.Y.S.2d at 933; *Buttram*, 924 S.W.2d at 871.

[¶ 56] To comply with the federal requirements in the Omnibus Budget Reconciliation Act of 1987 and the Family Support Act of 1988, Senate Bill 2245 was introduced in the 1989 North Dakota Legislative Assembly. *Hearing on S.B. 2245 Before the House Human Services and Veterans Affairs Comm.*, 51st N.D. Legis. Sess. (Mar. 10, 1989) (testimony of Marcellus Hartze, Director of the Child Support Enforcement Agency for the N.D. Dept. of Human Services) [*"House Hearing on S.B. 2245"*]. S.B. 2245 included the provisions making the Guidelines mandatory and those requiring medical insurance. Hartze explained:

Current law—The current federal requirement on medical support requires the IV–D agency to obtain medical support on IV–D cases if the IV–D agency is seeking to enforce a child support obligation.

Additions or changes to current law intend to allow child support enforcement officials to effectively comply with regulations concerning medical support enforcement.

The bill makes a determination as to who may be obliged to provide health insurance coverage for a child. The obligee, or custodial parent, who has group dependent health insurance coverage available at no or nominal cost, would be the first choice of coverage. The second choice of coverage would be the obligor who has available medical coverage through the obligor's employment at no or nominal cost. If neither parent has health insurance available at no or nominal cost, the court may require the obligor to obtain insurance or to be liable for reasonable and necessary medical expenses of the child.

. . . .

The bill describes health insurance which is reasonable in cost if it is available to the obligor on a group basis or through an employer or union regardless of service delivery system. The federal rules apply the same description.

*House Hearing on S.B. 2245, supra*, (testimony of Marcellus Hartze).

[¶ 57] In the Senate hearing, a department representative explained the sections of the bill:

*Section 5* of the bill amends existing Section 14–09–09.10 concerning definitions.

\*  \*  \*  \*  \*  \*

3. The phrase "health insurance" is defined in a manner consistent with the requirements of 45 CFR § 306.51(a)(2), a part of the federal rulemaking done in conformance with Section 16 of the Child Support Enforcements of 1984.

\*  \*  \*  \*  \*  \*

*Sections 23 through 28* are related to medical support enforcement. [A]ll six sections are intended to allow child support enforcement officials to effectively comply

with federal requirements concerning medical support enforcement. . . .

*Hearing on S.B. 2245 Before the Senate Human Services and Veterans Affairs Comm.,* 51st N.D. Legis. Sess. (Jan. 27, 1989) (testimony of Blaine Nordwall, Chief Legal Counsel for the N.D. Dept. of Human Services).

[¶ 58] The legislature's bill summary of S.B. 2245 states:

Generally, this bill:

As amended, establishes provisions relating to the direct payment of child support payments to the clerk of court, rebuttable presumptions that a child support amount in compliance with support guidelines is the correct amount, immediate withholding of income for payment of child support, periodic review of child support orders and notice of the review results, health insurance coverage for a child who is the subject of a child support order, and genetic rather than blood test for purposes of determining paternity. The bill has varying effective dates for different sections of the bill.

*Bill Summary of S.B. 2245,* 51st N.D. Legis. Sess. (Mar. 21, 1989) (Prepared by the Legislative Council staff).

[¶ 59] Provisions of S.B. 2245 were codified as N.D.C.C. § 14–09–08.10:

1. Unless the obligee has comparable or better group dependent health insurance coverage available at no or nominal cost, the court shall order the obligor to name the minor child as beneficiary on any health insurance plan that is available to the obligor at no or nominal cost.

2. *If* the court finds that dependent health insurance is not available to the obligor or the obligee at no or nominal cost, the court may require the obligor to obtain dependent health insurance, *or* to be liable for reasonable and necessary medical expenses of the child.

(emphasis added). The plain language of the statute makes subsection 2 available only if the specified condition is met ("If"), and liability for "reasonable and necessary medical expenses" only in the alternative ("or"). The legislative history makes clear this statute was intended to secure insurance coverage

for the child as required by federal statute and regulation. Ordinary child health care expenses not covered by insurance are included in the presumptively correct Guideline amount. Extraordinary health care costs not covered by insurance are grounds for deviation from the Guideline amount.

### III

[¶ 60] The majority ignores Morgan's enunciation of the law under the federal child support scheme, as outlined in ¶ 54: child health care expenses are divided into costs covered by insurance, ordinary costs not covered by insurance which are included in the basic support award, and extraordinary costs for which deviation from the presumptively correct guideline amount is permitted.

[¶ 61] In addition, the majority claims: "The North Dakota guidelines are unique from all other states in their treatment of 'medical expenses.' Morgan, *supra,* § 3.01[b][1] n. 21 (Supp.1998)." In fact, Morgan says one sentence in our Guidelines is unique ("North Dakota's guidelines are unique with regards to medical expenses, providing that medical expenses paid are deducted from income."). Except for that provision, discussed in *Dickson,* 1997 ND 167, ¶ 17 n. 2, 568 N.W.2d 284, allowing a deduction in the calculation of income, Morgan categorizes North Dakota among the broad number of states in its treatment of "uninsured and extraordinary medical expenses." Morgan, *supra,* § 3.02(b) table 3–2. Even if, as the majority claims, there is the potential for a type of "double counting" in some cases, this would be a flaw in the calculation of income, not an alteration or rejection of the federal framework outlined above. The majority is unable to identify anything in the legislative or administrative history to support its interpretation.

[¶ 62] The majority cites, at ¶ 16, a number of cases which supposedly reflect that: "These state courts have found it within the trial court's discretion to require, in addition to the child support award, payment of uninsured medical expenses." In fact, most of the cases support the analysis of *Dickson,* and Morgan's enunciation of the law omitted by the majority.

[¶ 63] The Indiana cases cited by the majority, *Lulay v. Lulay*, 583 N.E.2d 171, 172 (Ind.Ct.App.1991); *Hazuga v. Hazuga*, 648 N.E.2d 391, 395 (Ind.Ct.App.1995), reflect that ordinary uninsured medical expenses are included as a component in the basic guideline support amount. Indiana has specifically identified in its guidelines that six percent of the basic support amount is for ordinary uninsured medical expenses. Indiana Child Support Guideline 3(E)2. Only extraordinary medical expenses, which under the Indiana guidelines are those in excess of the six percent, are subject to additional allocation. *Truman v. Truman*, 642 N.E.2d 230, 238 (Ind.Ct.App.1994) ("The trial court erred because it did not require [the custodial parent] to spend a sum equal to 6% of the child support that she receives before [the noncustodial parent] is required to contribute towards payment of the uninsured medical expenses.") (footnote omitted). This is entirely consistent with *Dickson* and Morgan.

[¶ 64] *Jamison v. Jamison*, 845 S.W.2d 133, 136–37 (Mo.Ct.App.1993), upheld requiring the financially-able, noncustodial parent to contribute to uninsured medical expenses. The *Jamison* court noted, however, the child "was born with a chronic medical condition, which caused medical bills in excess of $15,000 to accumulate." *Id.* at 134. Under *Dickson*, Morgan, and the specific language of our Guidelines, a deviation is appropriate for such extraordinary medical expenses.

[¶ 65] In *Holdsworth v. Holdsworth*, 621 So.2d 71, 78 and n. 1 (La.Ct.App.1993), the court noted that extraordinary medical expenses may be assessed proportionately. The only medical expense issue in the appeal was whether these expenses should be assessed equally or based on "each parent's percentage of gross income." *Id.* at 78.

[¶ 66] These cases compel no change in the *Dickson* and Morgan analysis.[4]

[¶ 67] The majority opinion is inconsistent with the federal and state legislative and administrative histories and with the specific requirements of N.D. Admin. Code § 75–02–04.1–09(2)(d). It contravenes the federal goal of eliminating unfettered discretion, and invites the problems unfettered discretion created for children. *See* ¶ 52.

IV

[¶ 68] I would follow *Dickson*, Morgan, Guidelines, and statutes, and modify the judgment to require Gene Jarvis to pay $31.50 per month toward the premiums for children's health insurance and to delete the impermissible requirement he pay one-half of the children's ordinary uninsured medical expenses.

[¶ 69] Dale V. Sandstrom

4. The opinion concurring in the result basically reasons that because the trial court could have but did not require Gene Jarvis to pay the entire amount of the insurance premium, the trial court could order him to pay one-half of uncovered medical expenses. This basically says, "If you don't do something you can, you can do something you can't." I would not adopt such a novel legal analysis.