Elizabeth JAMISON (now
Barnes), Respondent,

v.

Harold M. JAMISON, Appellant.

No. WD 46185.

Missouri Court of Appeals,
Western District.

Jan. 19, 1993.

Michael C. McIntosh, Independence, for appellant.

Dana L. Parks, Kansas City, for respondent.

Before FENNER, P.J., and TURNAGE and KENNEDY, JJ.

PER CURIAM.

This is an appeal from the modification of an order of child support.

On December 12, 1985, the court found that Harold M. Jamison (hereinafter, "father") was the father of Brandon Mark Cass, son of Elizabeth Jamison (hereinafter, "mother"). The court, pursuant to an agreement between the parties, ordered that father pay child support in the amount of $73.00 per week, but $23.00 of the support would abate so long as father maintained medical and dental insurance for the child.

On November 14, 1991, mother filed an application for order to show cause why father should not be held in contempt, and a motion to modify child support. The motions alleged that father was delinquent over $21,000 in support, and mother was unaware that father had ever provided any medical or dental insurance for the child. Mother alleged that father was able-bodied and capable of earning a substantial income to support his child. Mother further alleged that there were substantial and continuing changed circumstances including, but not limited to, a tremendous increase in the cost of supporting the child, in part because the son was much older, and that father had experienced a substantial increase in income.

The court issued an order to show cause and held a hearing on February 4, 1992. Mother and father both testified. The testimony of the parties, viewed in a light most favorable to the judgment shows the following:

The son is a senior in high school, who, at 286 pounds, is a heavy weight wrestler at school. Consequently, his food bill is quite expensive, and he also has expenses for sporting equipment and school clothes. Further, he was born with a chronic medical condition, which caused medical bills in excess of $15,000 to accumulate.[1] Because he is a "high risk," mother stated that medical insurance would cost between $100 and $150 per month, and that because his medical costs often result from the chronic medical condition, they are considered a pre-existing condition not covered by insurance.

Mother has remarried and moved outside the district in which son was attending school. Although son's "residence" for the purposes of enrolling in school is with his grandparents and he "lives with them and [mother] equally," she provides for all his needs. The son plans to attend Ottawa University upon graduation; however, there was no testimony as to specific expenses. Mother's salary for the previous year was $19,500, but at the time of the hearing, she had just received a raise to $22,000. She filled out a Form 14[2] indicating that father's income was $26,000 per year. The mother's Form 14 calculated the father's child support obligation at $292.50 per month.

When the original decree was entered in 1985, father was working for General Motors, earning approximately $30,000 per year. In the middle of 1988, father took a "buy out" from General Motors. He quit his job, receiving $30,000 from his employer. Father testified that although he was not forced to take the buy out, he believed he would have been laid off because he did not have seniority. His gross wages were $9,421 for 1989, $2,818 in 1990, and $17,748 in 1991.

Father testified that he had intended to invest the buy out money, but in fact lived off it for the year and a half when he did not "hardly work any." There was no testimony that father made any effort to look for work during that time. Father admitted that he did not make *any* child support payments after the GM buy out. Father did not testify as to his expenses, but he did state that he recently obtained insurance for the son at a cost of $102 per month. The record does not reflect the presumed child support calculated by father's Form 14, although it was admitted

---

1. Mother testified that she was forced into bankruptcy by such bills since 1985.

2. Presumed Child Support Amount, Civil Procedure Forms, Missouri Rules of Court 1992.

into evidence.[3]

At the end of the hearing, the parties agreed that father would pay $2,000 of the delinquent support that day, and would pay $16,183.80 within 60 days, as complete satisfaction of past support obligations. The court, upon being given each party's completed Form 14, stated:

Be [sic] child support of $342.50 [4], that's splitting the insurance cost. Plus each party will be responsible for one half of the medical expenses that's not paid for by insurance. And Respondent shall pay it upon presentation of any bill by the Petitioner.

In its written order of March 2, 1992, the court ordered that father pay $342.50 child support per month to mother, *father* would maintain insurance for the son, and the parties shall each pay one-half of all uninsured medical costs. The parties did not request findings of fact, and court did not make any.

Father appeals, claiming the trial court erred in:

I. Ordering an increase in support because the court failed to consider the financial resources of the parents in that the father's wages had significantly decreased;

II. Ordering an increase in support because there was no showing of a substantial and continuing change of circumstance that would make the terms of support unreasonable because there was insufficient evidence of the child's need and father's ability to pay;

III. Ordering father to provide medical insurance and one-half of any unreimbursed medical expenses in that there was no finding which expenses were not covered, father's wages had significantly decreased and there was no evidence that he had the financial ability to contribute; and

IV. Entering a written judgment requiring father to provide medical insurance, contrary to its oral judgment that the parties split the cost of insurance.

The judgment is modified and affirmed as modified.

The father's first three points on appeal rely heavily upon the argument that the court erred in imputing a higher income to him when his evidence was that he made $17,949 per year.[5] The trial court's decision must be affirmed unless there is no substantial evidence to support it; it is against the weight of the evidence; or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *K.R.W. by A.C.S. v. D.B.W.*, 830 S.W.2d 38, 40 (Mo.App.1992).

Income may be imputed to a parent who is not working to his or her full potential. Rule 88.01 [6] and Form 14. Under Form 14, the Directions for Use state:

If either parent is unemployed or underemployed, child support may be calculated in appropriate circumstances based on a determination of potential income. To determine potential income, the court may consider employment potential and probable earnings level based on the parent's recent work history, occupational qualification, prevailing job opportunities in the community. (Emphasis added).

It is appropriate to consider father's recent work history to calculate his earning capacity, and the trial court may impute more income to a parent than he is actually earning, if the evidence proves that the parent has the capacity to earn but has voluntarily refused to do so. *Cf. Overstreet v. Overstreet*, 693 S.W.2d 242, 246 (Mo.App.1985) (Case was prior to Rule 88.01 and Form 14, the father in this case moved for a modification solely on the basis of his reduced income). A non-custodial parent should not be allowed to escape

---

**3.** Father has failed to include either party's Form 14 in the record on appeal.

**4.** By this court's calculations under Form 14, this is within $5.52 of the presumed child support amount of $348.02 assuming mother's salary is $1,833 per month ($22,000 per year) and father's salary is $2,750 ($30,000 per year).

**5.** Father testified that he makes $8.60 per hour, for forty hours per week. (Assuming 52.17 weeks per year).

**6.** All references to rules are to the Missouri Rules of Court 1992, unless otherwise indicated.

responsibility by deliberately limiting his work to reduce his income. *Hogrebe v. Hogrebe*, 727 S.W.2d 193, 195 (Mo.App. 1987). However, the burden is upon the mother to prove that the father formerly earned, presently earns, or could presently earn more income than he enjoyed at the time of the prior decree. *Morovitz v. Morovitz*, 743 S.W.2d 893, 895 (Mo.App.1988) (Decided prior to Rule 88.01 and Form 14).

■ Mother proved that father had been earning at least $30,000 per year at the time of the original order. Two years later, father voluntarily left his job, taking a buy out of $30,000, equivalent to one year's salary. There was evidence that father had earned at least $30,000 per year for four years. Further, there was no evidence that in the three years after he left General Motors, he ever looked for a job, thus supporting an inference that he was voluntarily unemployed. The fact that father made absolutely no child support payments during this time leads to the inference that father was avoiding his responsibility to son by being unemployed or underemployed. *AlSadi v. AlSadi*, 823 S.W.2d 123, 127 (Mo.App.1992). The trial court did not fail to consider the financial resources of the parties, and did not err in imputing income to father, although the father's wages had decreased. The first point is denied.

For his second point, father claims there was no showing of a substantial and continuing change of circumstance that would make the terms of support unreasonable because there was insufficient evidence of the child's need and father's ability to pay. Having already addressed the finding that income was properly imputed to the father, we consider whether there was a change of circumstances shown to support the increase in child support.

■ Mother testified that the son was a 285 pound senior in high school and that he was involved in wrestling. Son planned to attend college the following year. Mother testified that the expenses for son were much greater than they had been nearly six years earlier. There was sufficient evidence to support a finding that son's expenses had significantly increased since the original order, constituting changed circumstances so substantial and continuing as to make the original order of approximately $316.82 per month (not including abatement for insurance) unreasonable. *Echele v. Echele*, 782 S.W.2d 430, 438 (Mo. App.1989). Father's second point is also without merit.

■ For his third point, father complains of the court's requirement that he furnish medical insurance for the child and that he pay half of any medical expenses not covered by insurance. He says the court did not find what expenses were not covered by insurance. No findings of fact or conclusions of law were requested by either party. Fact findings are deemed to have been made in accordance with the result reached. *Heady v. Heady*, 766 S.W.2d 489, 491 (Mo.App.1989). Section 452.353.1 [7] does not require the court, as a condition to ordering father to pay or contribute to uninsured medical expenses, to make an express finding as to what medical expenses are covered by insurance and what are not. Such a finding would in most cases be impossible. In the court's order that father pay half of uninsured medical expenses, it is implicitly found that there are, or may be, medical expenses not covered by insurance.

Father says there was no evidence he has the financial ability to contribute to the medical expenses, but the evidence we have recounted above with respect to father's earning capacity is sufficient evidence of his financial ability to contribute to the medical expenses. Father cites *Barth v. Barth*, 790 S.W.2d 246 (Mo.App.1990), but in that case the financial resources of the custodial and non-custodial parents were so widely disparate, the court of appeals held it was inequitable to require the non-custodial father to contribute to uninsured medical expenses. That is not the case here. The court was within its discretionary latitude in ordering father to furnish medical insurance (or, as we hold infra, to furnish

---

**7.** All sectional references are to Missouri Revised Statutes 1986, unless otherwise indicated.

one-half the medical insurance premiums) and to pay half the uninsured medical expenses.

There is no contention by father that the court, in fixing the amount of child support to be paid, did not consider the cost of maintaining medical insurance as required by section 452.353.10, and by Form 14, Comment (A).

Father's third point is denied.

As his final point, father asserts the court erred in entering a written judgment requiring father to provide medical insurance, contrary to its oral judgment that the parties split the cost of insurance. Mother, in her brief, concedes this point. Thus, the trial court should enter a new judgment ordering that child support amount be credited with half the cost of the insurance father is providing, or $51 per month.

The judgment is affirmed except for that provision that father provide medical insurance at his own expense. That provision is modified as explained in the preceding paragraph, and the cause is remanded for entry of new judgment in accordance with the foregoing opinion.

All concur.