COURT OF APPEALS OF VIRGINIA


Present:    Judges Frank, McClanahan and Senior Judge Coleman
Argued at Richmond, Virginia


PATRICIA A. PRINCIOTTO (GORRELL)

                                                            OPINION BY
v.        Record No. 3386-02-2              JUDGE SAM W. COLEMAN III
                                                      JANUARY 13, 2004
ROBERT P. GORRELL, JR.


              FROM THE CIRCUIT COURT OF GOOCHLAND COUNTY
                          F. Ward Harkrader, Jr., Judge

              Murray J. Janus (Bremner, Janus, Cook & Marcus, on brief), for
              appellant.

              Donald K. Butler (Mark B. Michelsen; ButlerCook, L.L.P., on brief),
              for appellee.


       Patricia Ann Princiotto (mother) appeals the circuit court's decision concerning child

support payments.  On appeal, mother presents the following questions:

              I.  Whether the trial court erred in failing to award the mother child
              support in accord with the Virginia Child Support Guidelines for
              shared custody and for deviating from the presumptive amount
              without written findings.

              II.  Whether the trial court erred in allowing the father to pay the
              children's expenses directly instead of paying child support to the
              mother.

              III.  Whether the trial court erred in not awarding mother her
              attorney's fees [except for a $1,000 award for work to be done on a
              consent order], in light of the disparities in their income[s].

We find no error in the trial court's decisions regarding child support payments, and affirm on

Questions I and II.  However, we remand for the trial court to address the attorney's fees issue

presented in Question III.

Background

Mother and Robert Pinkney Gorrell, Jr. (father) married in 1977.  They have four minor children.  The parties separated in 1999 and entered into a separation agreement.  The agreement provided for division of their property, custody of the children, and spousal support.  Under the agreement, father paid mother spousal support through the end of 2001.  The agreement also stated that father would pay no child support until January 1, 2002, when mother's spousal support payments ended, "at which time either party may ask the Court to determine child support if they cannot agree."  The parties "agree[d] that the child support arrangements provided for in this agreement are fair and equitable and not otherwise subject to modification until January 1, 2002."  As part of the agreement, father would be responsible for the children's expenses for clothing, sports, horse boarding, summer camps, the majority of Christmas presents, extra-curricular activities, private school costs not paid for by other parties, tutoring, medical and hospitalization insurance, and extraordinary medical costs.

On March 14, 2000, the trial court entered a final decree of divorce in which it "affirmed, ratified and incorporated" the agreement.  One year later, the trial court entered a consent order.  That order reflected that the parties agreed to joint legal and shared physical custody of the children.

On January 1, 2002, father stopped making spousal support payments as provided by the terms of the agreement.  Thereafter, the parties could not agree on the amount of child support; however, father continued to pay the children's various expenses as required by the terms of the agreement.  In May 2002, mother moved for an award of child support under the statutory guidelines, Code § 20-108.2.  In deposition and hearing testimony, father presented evidence that his father (the children's grandfather) was paying the private school tuition for the children and that father's child care expenses paid between July 11 and October 22, 2002, totaled $17,896.

At a hearing on mother's motion, the trial court expressed concern about having child support payments paid directly to mother. The court "had . . . considerable[,] un-refuted evidence of the financial irresponsibility of [mother]." The court "want[ed] these children provided for" but did not "want their funds improperly utilized . . . [a]nd certainly the court would be remiss if [it] set up a system which would allow it to be done again." The facts showed that over the years the mother had accumulated large debt that she had attempted to secrete from the father and had been financially irresponsible. At the time of the hearing, mother had no house payments; she paid for utilities and repairs.

By order dated November 22, 2002, the court directed the parties to draft a consent order "as to what bills for the children [father] is to pay directly and deduct that from the guideline support with the balance to be paid directly to [mother]." The order required father to pay mother's attorney $1,000 "to cover the additional work required" on the consent order.

By order dated November 26, 2002, the court found that father had a monthly gross income of $12,713 and that mother had a monthly gross income of $1,462. Under the shared custody guidelines, the presumptive amount of child support was $1,535.

The court then concluded that the evidence warranted a deviation from the presumptive amount. The trial court found that mother "ha[d] demonstrated financial irresponsibility and that direct payments of child support to her would not benefit or be in the best interests of the children." In lieu of direct child support payments to mother, the court ordered father to pay all expenses of the children as set forth in the agreement of the parties.

Analysis

I.

"'Decisions concerning child support rest within the sound discretion of the trial court and will not be disturbed on appeal unless plainly wrong or unsupported by the evidence.'"

Rinaldi v. Dumsick, 32 Va. App. 330, 334, 528 S.E.2d 134, 136 (2000) (quoting Barnhill v. Brooks, 15 Va. App. 696, 699, 427 S.E.2d 209, 211 (1993)).

Mother's argument on the first question presented is two-fold. She first argues that the trial court erred in departing from the guidelines. She also contends the court erred in failing to make written findings to support the deviation as required by Code § 20-108.1(B).

A.  Deviation from the Guidelines

Code §§ 20-108.1 and 20-108.2 govern the method by which a trial court makes a child support determination and award. The court's award "shall be rendered upon the evidence relevant to each individual case. However, there shall be a rebuttable presumption . . . that the amount of the award which would result from the application of the guidelines set out in § 20-108.2 is the correct amount of child support to be awarded." Code § 20-108.1(B).

> In order to rebut the presumption, the court shall make written findings in the order, which findings may be incorporated by reference, that the application of such guidelines would be unjust or inappropriate in a particular case. The finding that rebuts the guidelines shall state the amount of support that would have been required under the guidelines, shall give a justification of why the order varies from the guidelines, and shall be determined by relevant evidence pertaining to the . . . factors affecting the obligation, the ability of each party to provide child support, and the best interests of the child[.]

Id.; Code § 20-108.2(A). The factors include, "court-ordered direct payments for the benefit of the child." Code § 20-108.1(B)(6). Where a parent seeks to modify a child support award that had been agreed to and incorporated by the court in its decree, the trial court must first calculate the presumptive amount of support under the guidelines in Code § 20-108.2 and then must determine whether deviation is required or warranted. See Watkinson v. Henley, 13 Va. App. 151, 158, 409 S.E.2d 470, 473-74 (1991). If the court determines that a deviation is required or warranted, it must justify why its order varies from the guidelines by applying relevant evidence

- 4 -

affecting the obligation, the ability to pay and the best interests of the children. Code § 20-108.2(A).

Here, the trial court calculated the presumptive award amount under the child support guidelines. The calculation of the presumptive award under the guidelines is not an issue on appeal. The court then found from the unrefuted evidence that mother had a long history of financial irresponsibility. That history had led the parties to enter into the separation agreement whereby the father directly paid most of the children's expenses in lieu of payments to mother. Under the agreement, father's direct payments far exceeded the presumptive amount set forth by the guidelines.

The court justified its deviation from the guidelines, in part, on a finding of financial irresponsibility on the part of mother. Code § 20-108.1 allows such a finding and consideration under subsection (B)(18) ("[s]uch other factor[] . . . as [is] necessary to consider the equities for the parents and children"). Such a factor, combined with the court's reference to and incorporation of the separation agreement, satisfies the statutory requirement for deviation from the guidelines. Code § 20-108.1(B)(16).

The trial court correctly followed the statutory procedures for determining child support. It found that direct payment of the child support to mother would not benefit or be in the best interests of the children and that the parties' agreement, which was incorporated into the final divorce decree, adequately provided for the children's support. The trial court did not abuse its discretion in reaching this conclusion.

### B. Written Findings

We find no merit in mother's argument that the trial court failed to make written findings to justify the deviation as required by Code § 20-108.1(B). To rebut the guidelines' presumption of correctness, "a trial court must make written findings of enough detail and exactness to allow

for effective appellate review of the findings. Specifically, these findings must identify the factors that justified deviation from the guidelines, and explain why and to what extent the factors justified the adjustment." Richardson v. Richardson, 12 Va. App. 18, 22, 401 S.E.2d 894, 897 (1991).

The court's order addressed the incomes and expenses of each party. It then found the presumptive child support guideline to be $1,535 per month. The court order then included the following language:

> The Court further determines from the evidence that it will deviate
> from the child support guideline amount for the reasons stated in
> Court, including the fact that [mother] has demonstrated financial
> irresponsibility and that direct payments of child support to her
> would not benefit or be in the best interests of the children.

We find such language complies with the statutory mandate to provide written findings in the court order. The court identifies the factors that justified deviation from the guidelines, and explains why and to what extent the factors justified the adjustment. The mother's financial irresponsibility and the father's willingness to continue to pay directly for the children's expenses in accordance with his prior agreement, which payments had consistently far exceeded the presumptive guideline amount, provided sufficient written justification to deviate from the guidelines. It provides enough detail and exactness for this Court upon review to find no error. See e.g., Wilson v. Wilson, 18 Va. App. 193, 196, 442 S.E.2d 694, 696 (1994) (quoting Mayers v. Mayers, 15 Va. App. 587, 591-92, 425 S.E.2d 808, 810-11 (1993)); Baumgartner v. Moore, 14 Va. App. 696, 698, 419 S.E.2d 291, 293 (1992); Auman v. Auman, 21 Va. App. 275, 277-78, 464 S.E.2d 154, 155-56 (1995).

## II.

Mother next contends that the trial court erred in allowing father to pay the children's expenses directly, rather than making payments to her. Mother claims that the court's order has

the effect of awarding zero child support to a parent with shared custody. We have touched upon the applicability of subparts (16) and (18) of Code § 20-108.1(B) to the trial court's decision. In addition to those factors, Code § 20-108.1(B)(6) allows a trial court to consider "court-ordered direct payments for the benefit of the child . . . ." While trial courts should be aware that a direct payment scheme for children's expenses may lead to administrative and accounting problems between the parties, it is not our task to determine whether the scheme is the wisest or easiest method of providing child support in a manner that will be in the best interests of the children. This statute authorizes and contemplates direct payments on behalf of the child if the court determines that they are in the best interests of the child. Here, the court's order provided, "it is ORDERED that in lieu of making direct child support payments to [mother], that [father] shall be responsible for paying all of the expenses of the children as set forth in the agreement of the parties."

We are to determine whether the trial court abused its discretion under the circumstances of this case in ordering direct payments of the children's expenses as the method for paying child support. See Rinaldi, 32 Va. App. at 334, 528 S.E.2d at 136. Given the applicability of the provisions of Code § 20-108.1(B), we cannot say that the court abused its discretion, under the facts of this case, in providing for direct payment of the children's numerous and substantial expenses, in amounts that historically exceeded the presumptive amount under the guidelines.

III.

Lastly, mother contends the trial court abused its discretion in failing to award her attorney's fees except for the $1,000 award made in conjunction with the drafting of the consent order. Before proceeding to the merits of this issue, we address father's contention that mother failed to preserve the issue as required by Rule 5A:18. We find that the issue was preserved. By pleading filed on May 3, 2002, supplemented by the introduction of an exhibit, mother asked the

trial court for an award of attorney's fees. Code § 8.01-384(A) governs. That statute reads, in pertinent part: "No party, after having made an objection or motion known to the court, shall be required to make such objection or motion again in order to preserve his right to appeal, challenge, or move for reconsideration of, a ruling, order, or action of the court." Having made the motion for attorney's fees in the pleading, mother was not required to reiterate it.

Upon consideration of the merits of this issue, we conclude that the trial court failed to consider or rule on mother's request. Mother requested $8,375 in fees. In the November 22, 2002 order, the court awarded $1,000 specifically to cover the additional work required in the drafting of the consent order. The final order, entered on November 26, 2002, does not address mother's request for fees for legal services rendered other than fees required for drafting the consent order.

We are mindful of the fact that "[a]n award of attorney's fees is a matter submitted to the trial court's sound discretion and is reviewable on appeal only for an abuse of discretion." Graves v. Graves, 4 Va. App. 326, 333, 357 S.E.2d 554, 558 (1987). However, in order to review a decision to award or refrain from awarding fees, or the amount of any award, the trial court must make a ruling for this Court to review. Here, the court failed to rule on the request. Accordingly, we remand this matter to the trial court to determine whether the attorney's fees requested by mother were appropriate, and, if so, to enter an order awarding those fees.

Affirmed, in part, and
remanded, in part.

McClanahan, J., concurring.

I join the majority opinion and concur with its reasoning except in one detail. I do not think it appropriate for us to discourage trial courts from exercising direct payment authority under Code § 20-108.1(B)(6) on the ground that it "may lead to administrative and accounting problems between the parties." *Ante,* at 7. That admonition comes perilously close to commenting on the "'propriety, wisdom, necessity and expedience'" of legislation. Mouberry v. Commonwealth, 39 Va. App. 576, 585, 575 S.E.2d 567, 571 (2003) (quoting Willis v. Mullett, 263 Va. 653, 658, 561 S.E.2d 705, 709 (2002)). See Harrison v. Day, 202 Va. 967, 973, 121 S.E.2d 615, 619 (1961) ("Courts have nothing to do with the wisdom of legislation."); see also Dale v. City of Newport News, 18 Va. App. 800, 802, 447 S.E.2d 878, 879 (1994).