UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Felton, Judge Kelsey and Senior Judge Bumgardner
Argued at Richmond, Virginia

WALTER EDWARD SAXON, JR.

                                                    MEMORANDUM OPINION[*] BY
v.     Record No. 0516-13-2                      JUDGE D. ARTHUR KELSEY
                                                    DECEMBER 17, 2013

ANGELA LESUEUR

FROM THE CIRCUIT COURT OF BUCKINGHAM COUNTY
Kimberly S. White, Judge

Brian R. Moore (Phillips, Morrison, Johnson & Ferrell,
on briefs), for appellant.

Marshall L. Ellett (Marshall L. Ellett, P.C., on brief),
for appellee.


Walter Edward Saxon, Jr. appeals a trial court order modifying a prior child-support

award.  Saxon claims the trial court provided inadequate written findings to justify the

modification and that, in any event, nothing in the evidentiary record could have justified the

award.  We disagree with both assertions and affirm.

I.

On appeal, "we view the evidence in the light most favorable to the prevailing party,

granting it the benefit of any reasonable inferences."  White v. White, 56 Va. App. 214, 216, 692

S.E.2d 289, 290 (2010) (quoting Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833,

835 (2003)).  "That principle requires us to discard the evidence of the appellant which conflicts,

either directly or inferentially, with the evidence presented by the appellee at trial."  Hamad v.

Hamad, 61 Va. App. 593, 596, 739 S.E.2d 232, 234 (2013) (internal quotation marks omitted).

So viewed, the record in this case shows that the parties agreed prior to the entry of their

final divorce decree that Saxon would pay LeSueur child support at $750 per month beginning in

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

January 2011.  Saxon and LeSueur have three sons, and, at the time of the agreement, two of their sons were under the age of eighteen.  The agreement authorized Saxon to seek a modification of the award any time after June 2011, when the middle son would turn eighteen.  Absent such a request, Saxon was required to pay the $750 monthly support "even after the second child reaches the age of majority."  App. at 256.  In calculating the agreed-upon child-support award, the parties modified the presumptive statutory amount by excluding LeSueur's spousal-support award from the initial income calculation.  Id. at 165, 193, 248, 298-99; see generally Code § 20-108.2(C) (requiring that spousal-support awards be factored into the payee's gross income and treated as a deduction in the payor's gross income).

The final divorce decree, entered in February 2012, restated and confirmed the parties' prior agreement that Saxon would pay $750 in monthly child support to LeSueur beginning in January 2011.  Though the final decree does not mention it, Saxon had already filed a motion to modify support in September 2011.  That motion remained inactive until the trial court heard evidence on the matter in December 2012.

At that hearing, Saxon requested a reduction in child support based on the fact that only one of their three sons remained under the age of eighteen.  Saxon argued that the modification of child support should be calculated using the child-support guidelines in Code §§ 20-108.1(B) and 20-108.2, with no deviation from the presumptive amounts.  In reply, LeSueur agreed the order should be modified but argued that she had incurred additional expenses justifying an upward departure from the presumptive amount of support under the guidelines.

At the time of the modification hearing, Saxon, a dentist, earned over $16,000 in monthly gross income — more than twice as much as LeSueur, who worked as a high school teacher.  App. at 294.  They shared legal and physical custody of their remaining minor son, who, at the time of the hearing, was seventeen-and-one-half years old and a senior in high school.

LeSueur testified that she paid for unique expenses incurred for the benefit of their teenage son that, her counsel argued, were not fully compensated by the presumptive guideline amount. These expenses included costs associated with their son's attendance at student organization conventions, a trip to Texas with a student organization, extra clothing and footwear, school supplies, lunch money, meals following weekly football games, senior graduation announcements, standardized test registration fees, college application fees, and gas money for their son's use of her vehicle. LeSueur added that Saxon contributed no additional money for any of these items and that these "extra" expenses averaged $500 a month. Id. at 185-86.

Saxon argued that the presumptive guideline amount should be enough to reimburse LeSueur for any reasonable expenses. Any expenditure beyond that, he contended, should be deemed a gratuity on LeSueur's part for which he should not be held responsible.

Finding LeSueur's testimony persuasive, the trial court ordered Saxon to pay $700 in monthly child support for their remaining son until he reached the age of eighteen. The court acknowledged that its award was considerably higher than the presumptive guideline amount, which the court calculated to be $285 monthly. The court explained that it took into account the relevant statutory factors and was particularly influenced by the "amount of reasonable monthly expenses covered by the Mother, mostly associated with school, college application fees," and the "prior agreement and very recent decree establishing the amount of child support at a higher amount, even in light of the payment of spousal support." Id. at 295, 354.

## II.
### A. STATUTORY "WRITTEN FINDINGS" REQUIREMENT

On appeal, Saxon contends the trial court's explanation for its ruling was insufficient to satisfy the statutory requirement that the court make "written findings" supporting any departure from the presumptively valid award based upon the guidelines. See Code §§ 20-108.1(B),

20-108.2(A). This statutory requirement obligates the trial court to "identify the factors that justified deviation from the guidelines" and to "explain why and to what extent the factors justified the adjustment." Richardson v. Richardson, 12 Va. App. 18, 22, 401 S.E.2d 894, 897 (1991); cf. Pilati v. Pilati, 59 Va. App. 176, 182, 717 S.E.2d 807, 810 (2011) (interpreting the analogous "written findings" requirement for spousal-support orders and stating the need for the trial court to explain "its resolution of any significant underlying factual disputes"). This is because there must be "enough detail and exactness to allow for effective appellate review of the findings." Princiotto v. Gorrell, 42 Va. App. 253, 260, 590 S.E.2d 626, 630 (2004) (internal quotation marks omitted).

In this case, the trial court's letter opinion and order stated that the court considered the relevant statutory factors and identified several matters deserving emphasis, including the "amount of reasonable monthly expenses covered by the Mother, mostly associated with school, college application fees," and the "prior agreement and very recent decree establishing the amount of child support at a higher amount, even in light of the payment of spousal support." App. at 295, 354. This explanation adequately informed the parties that the court accepted LeSueur's testimony about the additional expenses and took into account the parties' earlier child-support agreement. Though the court could have said more, it was unnecessary to do so. We sufficiently understand the court's decision to review it on appeal.[1]

## B. UPWARD DEPARTURE FROM STATUTORY GUIDELINES

"Code §§ 20-108.1 and 20-108.2 govern the method by which a trial court makes a child support determination and award." Princiotto, 42 Va. App. at 258, 590 S.E.2d at 629. Code

---

[1] In this respect, we appreciate and agree with Saxon's concession that "a remand seeking additional explanation may not be the most efficient method of dealing with this particular case." Appellant's Br. at 6.

§ 20-108.1(B) applies a "rebuttable presumption" that the amount of a child-support award determined pursuant to the guidelines laid out in Code § 20-108.2 is correct. The guidelines *guide*, but do not impair, the trial court's exercise of discretion. If the court believes the presumptive amount would be "unjust or inappropriate," Code §§ 20-108.1(B), 20-108.2(A), the court may order a greater or lesser award of child support. "The language is in the alternative and does not require a finding of both an 'unjust' or harsh result and an inappropriate result." Peter N. Swisher, Lawrence D. Diehl, & James R. Cottrell, Family Law: Theory, Practice, and Forms § 10:9, at 472 (2013). In the end, the decision rests within the "sound discretion" of the trial court. Calvert v. Calvert, 18 Va. App. 781, 784, 447 S.E.2d 875, 876 (1994).

An abuse of discretion occurs only when "reasonable jurists" could not disagree as to the proper decision. Brandau v. Brandau, 52 Va. App. 632, 641, 666 S.E.2d 532, 537 (2008) (quoting Robbins v. Robbins, 48 Va. App. 466, 482, 632 S.E.2d 615, 623 (2006)). This highly deferential standard of review "necessarily implies that, for some decisions, conscientious jurists could reach different conclusions based on exactly the same facts — yet still remain entirely reasonable." Hamad, 61 Va. App. at 607, 739 S.E.2d at 239. The trial court "has a range of choice, and its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." Lawlor v. Commonwealth, 285 Va. 187, 212-13, 738 S.E.2d 847, 861 (2013) (alteration and internal quotation marks omitted). We apply this "bell-shaped curve of reasonability" based on our "venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie." Hamad, 61 Va. App. at 607, 739 S.E.2d at 239.

In this appeal, Saxon has not shown that the trial court abused its discretion in issuing the modified child-support award of $700 per month. The court's findings demonstrate that it accepted as credible LeSueur's testimony about the unique expenses associated with their son's

activities during his last year of high school. She estimated these additional expenses to be $500 per month.

Saxon characterizes these expenses as wholly "voluntary expenditures," which should not serve as a basis for an upward departure from the guidelines. Appellant's Br. at 11. That assertion, however, presupposes that the expenses improve the child's standard of living above that established during the marriage. If the expenses merely provide for the standard of living the child was accustomed to during the marriage, the court should consider them when determining an award. See Code § 20-108.1(B)(10).

No evidence suggests that these expenses (student conventions and trips, gas money, fees for standardized test registration, fees for college applications, etc.) were extravagances that would not have been provided to the youngest son had the marriage remained intact.[2] Nor can it be inferred that the two older sons did not enjoy the same opportunities during their last year of high school. Just the opposite inference is likely, particularly considering the care the parents had previously given to their three sons and the combined incomes of both parents.

Saxon counters that the "income shares model," which underlies the child-support guidelines, Farley v. Liskey, 12 Va. App. 1, 5, 401 S.E.2d 897, 899 (1991), estimates the child's living expenses and then allocates them to the parties based upon their respective abilities to pay. From that premise, Saxon reasons that the trial court should grant an upward departure only when the claimed expenses are specifically shown to be higher than the child-rearing costs

---

[2] The record before us hardly justifies any application of the so-called "three pony rule." See generally Laura W. Morgan, Child Support and the Anomalous Cases of the High-Income and Low-Income Parent: The Need to Reconsider What Constitutes "Support" in the American and Canadian Child Support Guideline Models, 13 Can. J. Fam. L. 161, 198 & n.69 (discussing the need to limit child support in high-income cases to the "reasonable needs for the child of a wealthy parent," an idea encompassed by the statement that "no child needs three ponies" (citing In re Marriage of Patterson, 920 P.2d 450, 455 (Kan. Ct. App. 1996))).

already factored into child-support guidelines.  We agree with this principle, but disagree with Saxon's overbroad application of it to this case.

The guidelines adopted by the General Assembly reflect "the belief that parents have a duty to care for children to the best of their resources; this duty is dependent neither upon a successful marriage nor upon which parent has custody."  Rep. of the J. Subcomm. Studying Child Support Formulas, H. Doc. No. 34, at 6 (Va. 1988).  The guidelines implement the "income shares model" to child support, which

> provide[s] a child of divorcing parents with the same proportion of parental income that he would have received had his parents remained together.  Child support is calculated as the share of each parent's income estimated to have been allocated to the child if the parents and child were living in an intact household, as shown from research and economic data.

Id. at 11.[3]

The "research and economic data" predicate for the formula, id., involves statistical averaging and, of course, certain necessary assumptions.  One of the most significant assumptions addresses "the obvious fact that child raising expenses increase as the child grows older."  2 Homer H. Clark, Jr., The Law of Domestic Relations in the United States § 18.1, at 363 (2d ed. 1987).  Though the "income shares model" conceptually allows for the possibility of "age adjustments," Robert G. Williams, Guidelines for Setting Levels of Child Support Orders,

---

[3] The General Assembly initially enacted the Virginia Child-Support Guidelines in response to the federal Child Support Enforcement Amendments of 1984, Pub. L. No. 98-378, 98 Stat. 1305 (codified in scattered sections of 42 U.S.C. and 26 U.S.C. ), see also 45 C.F.R. § 302.56 (compliance regulations), which conditioned each state's receipt of "federal funding for administrative costs of the child support enforcement program," Rep. of the J. Subcomm., H. Doc. No. 34, at 3, on the adoption and distribution of child-support guidelines.  In 1989, the General Assembly revisited the Virginia Child-Support Guidelines in response to the federal Family Support Act of 1988, Pub. L. No. 100-485, 102 Stat. 2343 (codified in scattered sections of 42 U.S.C. and 26 U.S.C. ), and "incorporate[d] the rebuttable presumption provision," Dep't of Soc. Servs. Div. of Child Support Enforcement, The Impact of Child-Support Guidelines on the Level of Child-support awards in Virginia, S. Doc. 4 (Va. 1990).

21 Fam. L. Q. 281, 292 (1987), the "research and economic data" embedded in the Virginia formula do not take into account the child's age, Rep. of the J. Subcomm., H. Doc. No. 34, at 13. Instead, Virginia's guidelines, like all non-age-adjusted guidelines, assume "the average cost of childrearing *over the life of the child*." Laura W. Morgan, Child-support guidelines: Interpretation & Application § 7.05[A], at 7-81 (2d ed. 2013) (emphasis added); see also Rep. of the J. Subcomm., H. Doc. No. 34, at 13.

It may seem odd to presuppose the cost of rearing an infant to be about the same as a high-school senior. But it makes sense if one assumes, as we do, that "parents' incomes generally rise as children age," and thus "the increased cost of rearing older children will be accounted for in the income shares formula" adopted by the statute. Rep. of the J. Subcomm., H. Doc. No. 34, at 13.[4] In cases in which the child-support award begins when the child is quite young and continues to the age of majority, the cost disparities balance out over the years of the award. The overestimate in the early years roughly cancels out the underestimate in the latter years.

But in cases in which the child-support award *begins* and *ends* during the year or two before the child turns eighteen, as is the case here, the cost-averaging assumption may be inequitable. In such cases, a pure guideline-based award can be adjusted if it appears to be "unjust or inappropriate." Code §§ 20-108.1(B), 20-108.2(A).[5] Thus it is entirely reasonable, at

---

[4] The formula also assumes that the "proportion of household income" devoted to children typically decreases as marital income increases. Williams, supra, at 286-89 (recognized as authoritative by the Rep. of the J. Subcomm., H. Doc. No. 34, at 6, and by this Court in Farley, 12 Va. App. at 5, 401 S.E.2d at 899). The validity of the first assumptions has been the subject of critical commentary. See generally Kathleen A. Hogan, 17 J. Am. Acad. Matrim. Law 349, 351-52 (2001).

[5] We agree with those courts that have concluded that the increased expenses associated with older children may be taken into account when departing from child-support guidelines like those in Virginia, which do not include an age adjustment in the basic formula. See, e.g., Burson v. Burson, 608 So. 2d 739, 741 (Ala. Civ. App. 1992); In re Marriage of Boyden, 517 N.E.2d

least in Virginia, for a trial court to take into account a payee parent's testimony about the age-related costs associated with raising a seventeen-and-one-half-year-old high-school senior. Infants, toddlers, and pre-teens, after all, do not drive cars or rent tuxedos for high school dances. This is not to say that trial courts can reflexively depart from the guidelines as a matter of course whenever they are addressing children at the threshold of majority, but it is to say that expenses naturally related to a child of that age can be taken into account when considering the standard-of-living factor, Code § 20-108.1(B)(10), as a reason for departing from the presumptive guideline amount.[6]

This observation, standing alone, might not be enough to warrant the $700 award made by the trial court in this case. In cases where, as here, proof of age-related costs has been shown, the overage should ordinarily be allocated to the parties based on the income shares model and then further adjusted in shared-custody situations. Two additional considerations, however, relieve us of the necessity of ruling solely on this ground.

The first is the trial court's observation that the parties had earlier agreed to a child-support award using a calculation that excluded LeSueur's spousal-support award from her income baseline for purposes of calculating child support. The trial court could reasonably infer

---

1144, 1146 (Ill. App. Ct. 1987); In re Marriage of Smith, 501 N.W.2d 558, 560 (Iowa Ct. App. 1993); Stevens Cnty. Soc. Servs. Dep't ex rel. Banken v. Banken, 403 N.W.2d 693, 698 (Minn. Ct. App. 1987); Jamison v. Jamison, 845 S.W.2d 133, 136 (Mo. Ct. App. 1993); Zucker v. Zucker, 589 N.Y.S.2d 908, 910 (N.Y. App. Div. 1992); McCarty v. McCarty, 863 S.W.2d 716, 721 (Tenn. Ct. App. 1992); In re Marriage of Hamer, 906 S.W.2d 263, 267 (Tex. App. 1995).

[6] We acknowledge the criticism that this approach is flawed because, "Just as there should not be a deviation from the guidelines because a child's needs might be less than the guidelines amount due to a child's young age, there should not be a deviation from the guidelines because a child's needs *might* be greater than the guidelines amount." Morgan, *supra*, § 7.05[B], at 7-82 (emphasis added). However, this criticism is overbroad because it assumes a child-support award that has a sufficiently lengthy duration to balance out the age-related disparities embedded in the underlying cost assumptions. Indeed, an age-related "deviation or modification" may be appropriate "where a child's *actual, demonstrated* needs are greater." Id. (emphasis added).

that this fact suggested the parties understood the need for an upward departure from the guidelines and chose to effect it by adjusting the initial formula rather than by deviating from the results of the normal formula after the fact. By taking this into account, the trial court considered the parties' prior "agreement" concerning child support, a permissible consideration authorized by Code § 20-108.1(B)(14).

Second, at the time of the hearing, the age-related costs incurred by LeSueur for her son were limited to a relatively short time-frame. The increased expenses of a high-school senior, a specific stage in the son's life with unique costs, would not be a recurring financial burden. Thus, the trial court imposed an award that, prospectively, would last only six months. This consideration belongs in the category of concerns encompassed by the catch-all factor, Code § 20-108.1(B)(15), which focuses the court's attention on "[s]uch other factors as are necessary to consider the equities for the parents and children." By including such a broad ground for individualized, case-specific equitable concerns, the statute reinforces the overarching principle that, if the evidence supports doing so, "a liberal approach to the granting of deviations should be taken by Virginia's courts in their implementation of child support computations." Swisher, Diehl, & Cottrell, *supra*, § 10:9, at 471.

### III.

Finding the trial court's written explanation satisfactory and its award within its sound discretion, we affirm the modified child-support order requiring Saxon to pay $700 per month until his son reaches the age of majority.

<u>Affirmed.</u>